[Cite as *Lynn v. Ohio State Hwy. Patrol*, 2011-Ohio-7004.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CANDACE LYNN

      Plaintiff

      v.

OHIO STATE HIGHWAY PATROL, et al.

      Defendants

Case No. 2007-01282

Judge Clark B. Weaver Sr.

DECISION

{¶1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} This case arises as a result of a motor vehicle collision that occurred at approximately 1:30 p.m. on January 26, 2005, in the town of Streetsboro, Portage County, Ohio. Plaintiff was a passenger in a van that was traveling westbound on State Route (SR) 14 and operated by plaintiff's husband, Kenneth Lynn.[1] Michael McCarthy, a trooper with the Ohio State Highway Patrol (OSHP), was traveling northbound on SR 43, acting as a "safety officer" for a convoy of trucks that was escorting a semi-trailer truck carrying an over-sized load. After activating the siren and overhead lights on his patrol car, McCarthy entered the intersection of SR 14 and SR 43 to close it to traffic. The lead vehicle in the convoy was known as the "pole truck," a pick-up truck that was equipped with flashing lights and a vertical pole to check for overhead obstructions. The pole truck slowly followed McCarthy's patrol car into the intersection to verify that

---

[1]Kenneth Lynn, who is now deceased, is not a party to this action.

the height of the traffic lights was sufficient to allow the convoy to pass underneath. The collision occurred when plaintiff's vehicle entered the intersection and struck the right side of the pole truck.

{¶3} Plaintiff alleges that McCarthy negligently directed traffic at the intersection, thereby causing the accident which resulted in serious injuries to plaintiff. In order for plaintiff to prevail upon her claim of negligence, plaintiff must prove by a preponderance of the evidence that McCarthy owed her a duty, that McCarthy's acts or omissions resulted in a breach of that duty, and that the breach proximately caused her injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶4} Plaintiff testified that the weather was sunny and clear at the time of the accident and that she yelled to warn her husband when she looked up and saw the pole truck in the intersection. Plaintiff recalled that she also saw the patrol car in the intersection, but that she did not remember whether other cars were between her van and the other vehicles in the intersection. Plaintiff testified that she and her husband knew the intersection well and she described it as "big and busy." According to plaintiff, on the day of the incident, her husband took 13 different medications for various medical conditions. Although plaintiff testified that some of the medications can cause drowsiness, she believed her husband was alert at the time of the accident.

{¶5} Russell Mateja, a truck driver who witnessed the accident, testified that he was heading east on SR 14 and preparing to make a left turn onto northbound SR 43 when he noticed the convoy approaching from the south. Mateja testified that the left turn signal for his lane turned green just before the patrol car entered the intersection. Mateja stated that he had a good view of the intersection and that SR 14 had a total of six lanes running both west and east. According to Mateja, the patrol car remained in the southwest quadrant of the intersection and blocked traffic traveling east on SR 14, but it did not appear that the intersection was closed to westbound traffic.

{¶6} Trooper McCarthy testified that he had served as an escort on 20 to 30 prior occasions. According to McCarthy, he activated the lights and siren on his patrol car before entering the intersection while the traffic signal was green. McCarthy related that he drove to the middle of the intersection so that his car would be visible to other

motorists and he explained that he did not exit the car before the accident occurred because it would have been unsafe to do so. McCarthy stated that the convoy was "creeping along" at approximately five miles per hour (mph) on an uphill grade as it approached the intersection and that he had stopped all traffic near the intersection before the pole truck entered. McCarthy testified that he first observed plaintiff's vehicle "out of the corner of his eye" as it approached the intersection and that the pole truck was checking the height of the traffic lights when the collision occurred. After the accident, McCarthy radioed for assistance.

{¶7} Plaintiff's expert, Dale Meyer, testified that he retired as a sergeant with the OSHP, where he received training in crash investigation and accident reconstruction, and that he is currently certified in traffic reconstruction. Meyer testified that he reviewed, among other things, the traffic crash report, witness statements, and photographs of the accident scene. According to Meyer, McCarthy did not properly control the intersection based upon both McCarthy's testimony that he did not get out of the patrol car and the statements of two witnesses, Gary Hall and Russell Mateja, who averred that McCarthy entered the intersection on a red light and that the patrol car was not parked in the middle of the intersection. (Plaintiff's Exhibits 4 and 5.) Meyer testified that the patrol car was not a traffic control device and that it was necessary for McCarthy to exit his vehicle and give hand signals to effectively control traffic. Meyer stated that the Airbag Control Module (ACM) from plaintiff's van showed that the van was traveling 42 mph before the brakes were applied, seconds before the crash. Although the posted speed limit was 35 mph, Meyer opined that the speed of the van was reasonable in light of the road conditions and that speed was not a contributing factor inasmuch as Meyer's calculations showed that there still would have been a collision even if the van had been traveling 35 mph when the brakes were applied. Meyer testified that he used 1.5 seconds as a standard "perception-reaction time," the time between perceiving a hazard and reacting to avoid the hazard. On cross examination, Meyer testified that when he performed his calculations he did not consider whether Kenneth Lynn's medications affected his perception-reaction time.

{¶8} Timothy Tuttle, defendants' accident reconstruction expert, testified that the section of SR 14 on which plaintiff's van was traveling had a slight downgrade toward

the intersection such that the occupants of the van had an "elevated view" as they approached the intersection. According to Tuttle, given Kenneth Lynn's history of diabetes and the medications he took, it was not appropriate for Meyer to use 1.5 seconds for Lynn's perception-reaction time in reconstruction calculations. However, Tuttle testified that, even assuming 1.5 seconds for Lynn's perception-reaction time, his calculations showed that if plaintiff's van had been traveling at the 35 mph posted speed limit, Lynn would have had sufficient time to stop the vehicle and avoid a collision with the pole truck. Tuttle was also critical of Meyer's opinion that McCarthy should have exited his patrol car to direct traffic. Tuttle stated that he was aware of incidents involving troopers who were struck by passing motorists and that motorists were less likely to notice McCarthy than a patrol car, inasmuch as McCarthy was wearing a black uniform and the white patrol vehicle, equipped with flashing lights, was designed to attract attention. Tuttle opined that the center of the intersection was not necessarily the best location to park a patrol car while attempting to close an intersection. According to Tuttle, a car in the center of the intersection can be less visible to motorists when other vehicles are present in adjacent turn lanes.

{¶9} The court finds that McCarthy's testimony regarding his training and his actions in securing the intersection by parking at or near the center of the intersection was credible and persuasive. The court further finds that McCarthy entered the intersection on a green light and that he utilized the lights and siren on his patrol car. Meyer acknowledged that once the lights and siren were activated on the patrol car, motorists were required to yield to the vehicle and that McCarthy had the authority to clear the intersection upon entering it. Indeed, Meyer conceded that he was not aware of any violation of law or OSHP policy that McCarthy committed aside from Meyer's contention that McCarthy entered the intersection on a red light. Based upon the evidence, the court finds plaintiff has failed to prove by a preponderance of the evidence that defendants committed a breach of any duty owed to plaintiff.

{¶10} Furthermore, the common law of Ohio imposes a duty of reasonable care upon motorists that includes the responsibility to observe the environment in which one is driving. See, e.g., *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, 17. "While it is true that generally one has a right to assume that other drivers will exercise due care and

observe the law, this does not permit one to drive blindly down the highway. A driver is always under a duty to exercise ordinary care under the circumstances." *Orr v. Zeff* (Mar. 26, 1980), Hamilton App. No. C-790022.

{¶11} The court finds that Kenneth Lynn had both a duty to look ahead toward the intersection and a duty to yield to both the patrol car and the pole truck that had entered the intersection. Tuttle testified that the patrol car and the pole truck were in Kenneth Lynn's direct field of vision and that plaintiff's testimony that she observed both vehicles in the intersection shows that Kenneth Lynn also had an unobstructed view of the vehicles. The court is convinced that Kenneth Lynn drove into the intersection without paying attention to the attendant circumstances.

{¶12} Assuming arguendo that plaintiff proved that defendants were negligent, the overwhelming weight of the evidence proves that Kenneth Lynn's negligence in failing to comply with his duty to observe and yield to both the patrol car and the pole truck outweighed any negligence on the part of defendants. Accordingly, judgment shall be rendered in favor of defendants.

 Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CANDACE LYNN

     Plaintiff

     v.

OHIO STATE HIGHWAY PATROL, et al.

     Defendants

Case No. 2007-01282

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶13} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Antonios P. Tsarouhas
300 Courtyard Square
80 South Summit Street
Akron, Ohio 44308-1736

Christopher P. Conomy
Daniel R. Forsythe
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

AMR/dms
Filed December 5, 2011
To S.C. reporter March 5, 2012